UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LAPINE,

        Plaintiff,                    Case Number: 2:20-cv-12787
                                            HON. VICTORIA A. ROBERTS

v.

M. HARTZLER, ET AL.,

        Defendants.
_____/

## ORDER OF PARTIAL DISMISSAL

**I.    Introduction**

Michigan state prisoner Darrin LaPine has filed a *pro se* complaint under 42 U.S.C. § 1983. LaPine names twenty-one defendants and several John and Jane Does. He alleges violations of the First, Fifth, Eighth, and Fourteenth Amendments. LaPine has been granted leave to proceed without prepayment of the filing fee for this action.[1] *See* 28 U.S.C. § 1915(a)(1). He seeks declaratory and monetary relief. For the reasons discussed, the Court will dismiss Defendants Sims, Willis Chapman, Tiffany DeLuca, Cinthia McInnis, Patrice Pheneuf, T. Johnson, E. Parr-Mirza, Patricia Lamb, Dianna Herring, Sherry Graham, Gretchen Whitmer, Corizon, Inc., Nenrod, G. Stephenson, Vanessa Hinajosa, Michelle Williams-Ward, and Alan Greason. The Court will also

---

[1] Although Plaintiff has "three strikes," the Court granted his application for leave to proceed *in forma pauperis* because his claims that he is at severe risk of paralysis and that his off-site appointments with a specialist have been cancelled sufficiently allege an imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g).

dismiss Plaintiff's Fifth and Fourteenth Amendment claims.

## II. The Complaint

Plaintiff maintains that he has long suffered from numerous back problems, including injuries to his cervical and lumbar spine, which place him at risk of paralysis. (ECF No. 1, PageID.3.) He claims that an assault on March 13, 2020, by defendant M. Hartzler, increased his risk of paralysis and caused significant pain. (*Id.* at 4.) On that date, Hartzler intervened as Plaintiff attempted to resolve a disagreement with a food service employee. Hartzler violently jerked Plaintiff from his wheelchair "nearly tearing his shoulder out of the socket, with excessive force, then cranked his arms behind his back," and closed the handcuffs as tightly as possible around Plaintiff wrists. (*Id.*) Plaintiff filed a grievance against Hartzler. (*Id.* at 4-5.) Plaintiff claims that Hartzler issued a false misconduct ticket against him in retaliation for grievances LaPine previously filed. (*Id.*) Plaintiff was found guilty of the misconduct and spent six days in segregation. (*Id.* at 6.) Plaintiff also claims that defendant Lieutenant Sims observed Hartzler's conduct, but failed to intervene. (*Id.* at 5.)

Plaintiff maintains that he did not receive adequate medical attention for injuries suffered to his shoulder and wrists from the March 13, 2020 altercation. On the day of the assault, he asked defendant Tiffany Deluca, R.N., for medical attention. Deluca, who was passing out medications, told LaPine she did not have time to treat him and he should submit a kite. (*Id.* at 6.) Later that day, LaPine asked defendant Sims to contact medical for him. She replied "sarcastically" that she would "get right on that," but did not do so.

(*Id.* at 7.)

The day after the altercation, Plaintiff asked the warden, defendant Willis Chapman, and defendant Patrice Pheneuf, a nurse, for medical treatment. (*Id.*) Both advised Plaintiff to submit a kite requesting medical treatment. (*Id.*) Later that day, Plaintiff was taken to medical and treated by defendant Cinthia McInnis, R.N. (*Id.* at 7-8.) McInnis provided him with band aids, ointment, and ice for the swelling. (*Id.*)

Plaintiff filed a grievance regarding his medical treatment. He claims that the grievance response was full of lies by two defendants, Nurses T. Johnson and E. Parr-Mirza, and that defendant Patricia Lamb, also a nurse, improperly denied the grievance. (*Id.* at 8.)

Plaintiff states that he continued to send kites requesting medical attention and, over the course of six days (March 16-21, 2020), received responses from several defendants advising him to wait for the next visit with his health care provider.[2] Plaintiff

---

[2]Plaintiff details the following responses to his requests for medical treatment:

- On March 16, 2020, defendant Dianna Herring, R.N. advised Plaintiff to "discuss this with your MP at your next provider visit ..." (ECF No. 1, PageID.8.)

- On March 18, 2020, defendant Sherry Graham, R.N. replied: "[T]his is a duplicate kite request. Please wait for callout from health care to address it ..." (*Id.*)

- On March 19, 2020, defendant McInnis responded: "Please discuss this with your medical provider." (*Id.*)

- On March 21, 2020, defendant Graham stated: "[Y]ou were seen on March 14, 2020 with regards to your health care issues relating to your wrist and

3

maintains that he was not seen by his health care provider. (*Id.*)

On March 16, 2020, defendant Mike Groves placed a black box restraint[3] on Plaintiff to transport him from the prison to an offsite medical appointment with a neurosurgeon. (*Id.* at 10.) Groves used the black box even though Plaintiff had cautioned that it was too small for him. Groves told Plaintiff he was directed to use the black box by his supervisor, Lieutenant White, and placed Plaintiff in the transport van. (*Id.*) Twenty minutes later, Plaintiff's wrists had swelled to "twice their normal size." (*Id.*) Eventually, Plaintiff was taken back into the facility where two nurses noted that the handcuffs were too tight. (*Id.*) Defendant White did not allow Plaintiff to go to his medical appointment. (*Id.*) Plaintiff wrote a grievance against Defendant White. White threatened Plaintiff for filing a grievance. (*Id.*) Defendants G. Stephenson and Nenrod rejected the grievance. (*Id.* at 11.)

Next, Plaintiff complains about the conditions of the segregation cell. He states that he was made to utilize a flat, rank mattress, which aggravated his spinal condition and caused severe pain. (*Id.* at 11-12.) He argues that defendants Chapman, Stephenson, Steece, Williams-Ward, Hinojosa, White, and Greason violated his Eighth Amendment rights based upon the conditions of the mattress. (*Id.*)

---

shoulder ..." (*Id.*)

[3] The black box is an apparatus placed over handcuffs to prevent a prisoner from tampering with the handcuffs' lock. *See Bond v. Akiss*, 37 F.3d 1498 (6th Cir. 1994); *Davis v. Mott*, No. 292959, 2010 WL 3719230, at *1 (Mich. Ct. App. Sept. 23, 2010).

Finally, Plaintiff alleges that MDOC healthcare provider Corizon, Inc., failed to train employees how to handle injuries like those he suffered, how to handle kites and make proper referrals, and how to implement Governor Gretchen Whitmer's COVID-19-related executive orders in the prison setting.

## III. Standard

Under the Prison Litigation Reform Act of 1996 ("PLRA"), the Court is required to sua sponte dismiss an in forma pauperis complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). The Court is similarly required to dismiss a complaint seeking redress against government entities, officers, and employees which it finds to be frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A. A complaint is frivolous if it lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

A *pro se* civil rights complaint is to be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of this rule is to "give the defendant fair notice of what the claim is and the

5

grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). While this notice pleading standard does not require "detailed" factual allegations, it does require more than the bare assertion of legal principles or conclusions. *Twombly*, 550 U.S. at 555. Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he or she was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009). A plaintiff must also allege that the deprivation of rights was intentional, not merely negligent. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327, 333-36 (1986).

## IV. Discussion

### A. Defendant Corizon, Inc.

Plaintiff argues that Corizon failed to properly train their employees to evaluate and provide treatment for medical injuries, process kites, and implement Michigan Governor Gretchen Whitmer's pandemic-related executive orders in the prison setting.

A private entity like Corizon which contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). But a corporation like Corizon may be not held liable in a § 1983 suit under a vicarious liability theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 817-18 (6th Cir. 1996) (holding that private entities employed by the state cannot be held liable under § 1983 on a *respondeat superior* theory of liability). So, in order for Corizon to be liable, Plaintiff must show that he suffered an injury from a custom or policy and that the custom or policy at issue is that of Corizon. *Street*, 102 F.3d at 817-18 (6th Cir.1996). The policy or custom "must be the moving force of the constitutional violation." *Monell*, 436 U.S. at 694.

The Supreme Court has cautioned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' is 'far more

7

nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*'")). Culpability for failure to train employees depends upon whether the failure to train "amount[ed] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. *Id.* at 61 (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiff alleges only conclusory claims regarding Corizon. He has not put forth allegations of a pattern of constitutional violations. Specifically, he has not made alleged facts to suggest "that there were prior instances of similar misconduct so as to show that [Corizon] was on notice that its training and supervision ... was deficient." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Plaintiff fails to state a failure-to-train claim against defendant Corizon.

### B. Eighth Amendment

Plaintiff argues that his rights under the Eighth Amendment were violated in numerous ways related to three separate incidents: a March 13, 2020 altercation with corrections officer M. Hartzler; a March 16, 2020 transport incident; and the conditions of his segregation cell.

"[T]he Eighth Amendment prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly

8

disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted) (internal quotation marks omitted). To succeed on an Eighth Amendment claim, a prisoner must establish two elements, one objective and one subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the objective component requires a prisoner to show that the conduct was "sufficiently serious." *Rafferty v. Trumbull County, Ohio,* 915 F.3d 1087, 1094 (6th Cir. 2019) (quotation omitted). The objective component "is a 'contextual' inquiry that is 'responsive to contemporary standards of decency.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)). The subjective component requires the plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.2001).

### 1. March 13, 2020 Incident

Plaintiff claims that, on March 13, 2020, defendant Hartzler intervened when Plaintiff was attempting to resolve a dispute with a food service employee. (ECF. No. 1, PageID.4.) He claims Hartzler violently pulled him from his wheelchair "nearly tearing his shoulder out of the socket, with excessive force," then handcuffed Plaintiff behind his back with the handcuffs closed as tightly as possible. (*Id.*) Hartzler issued a misconduct ticket against Plaintiff and Plaintiff was immediately transported to the segregation unit. (*Id.*) Plaintiff alleges sufficient facts to state an Eighth Amendment claim against

9

defendant Hartzler and this claim may proceed.

Plaintiff alleges Hartzler caused injuries to his shoulders and wrists and that the following defendants were deliberately indifferent to his medical needs because they failed to secure medical attention for these injuries: Chapman (the warden), nurses Deluca, McInnis and Pheneuf, and corrections officer Sims. (*Id.* at 6-7.) On the date of the incident, Plaintiff asked defendants Deluca and Sims for medical attention but neither arranged for medical attention. (*Id.* at 6.) The following day, Plaintiff asked defendants Chapman and Pheneuf to arrange for medical treatment. (*Id.* at 7.) Both defendants advised Plaintiff to submit a kite. (*Id.*) Plaintiff was taken to medical later that day. (*Id.*) He was treated by defendant Cinthia McInnis, a registered nurse, who provided him with band aids, ointment, and ice. (*Id.* at 7-8.)

Plaintiff has not shown that any of these defendants acted with deliberate indifference to his medical needs. He was told to proceed with his medical request through the normal prison procedures, by submitting a kite request. This response for a non-emergent medical issue does not a support a finding that any of these defendants "recklessly disregarded" a substantial risk of serious harm to him or acted with deliberate indifference to his medical needs. *Comstack v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The medical care he received was also in keeping with MDOC policy, which provides that, where a prisoner complains of an "urgent" condition, the health care professional evaluating the complaint must schedule the prisoner to be seen no later than the next business day. *See* MDOC Policy Directive 03.04.100. None of the facts alleged

by Plaintiff support a finding that his was an "urgent" condition. Nevertheless, he was treated by defendant McInnis the day after his injury. This delay was not "inconsistent with contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).

To the extent that Plaintiff claims that the medical attention he received from defendant McInnis was inadequate, he fails to state an Eighth Amendment claim. The Sixth Circuit distinguishes between cases where a prisoner alleges the complete denial of medical care and cases where a prisoner received treatment which he alleges was inadequate. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001). Where medical treatment has been provided, a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Id.* Plaintiff may disagree with the manner and degree of treatment McInnis provided, but this is insufficient to make such a showing. Even if the treatment Plaintiff received was negligent, this does not give rise to an Eighth Amendment claim. *Comstock,* 273 F.3d at 703 (6th Cir. 2001) ("When a [medical professional] provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.").

Plaintiff fails to state an Eighth Amendment claim for the March 13, 2020 incident against defendants Chapman, Deluca, McInnis, Pheneuf, and Sims. Defendants Deluca, Pheneuf, and Sims will be dismissed from this action. Plaintiff raises additional claims against defendants Chapman and McInnis, which, as discussed below, are also meritless.

So they will also be dismissed.

### 2. March 16, 2020 Transport Incident

Plaintiff claims that his wrists and shoulders were injured on March 16, 2020, when he was being prepared for transport for a medical appointment. Defendant Mike Groves used black box restraints on Plaintiff even though Plaintiff cautioned they were too small. Groves was advised to use the restraints by his supervisor, defendant White. Twenty minutes later, Plaintiff's wrists had swelled to "twice their normal size." (ECF No. 1 PageID.10.) Defendant White did not permit Plaintiff to go to his medical appointment. (*Id.*)

While the facts alleged by Plaintiff are not substantial, at this early stage, the Court will allow Plaintiff to proceed on his Eighth Amendment claim against Groves and White.

Plaintiff submitted kite requests for medical attention following the transport incident. While it is unclear whether these kites concerned injuries sustained on March 13th or 16th, the kites concerned the same physical complaints as the earlier kites – pain to his shoulder and wrists. (*See* ECF No. 1, PageID.8-9.) He alleges defendants Herring, Graham and McInnis failed to respond appropriately because they told him to wait for a health care callout which, he claims, did not come. (*Id.*) Plaintiffs claims against these defendants are insufficient to state an Eighth Amendment claim. He does not allege that any of these defendants prevented him from obtaining or attending a medical appointment or that any had responsibility for scheduling a medical appointment. Plaintiff's vague allegations against defendants Herring, McInnis, and Graham fail to state a claim and

they will be dismissed.

### 3. Conditions in Segregation Cell

Finally, Plaintiff asserts that for the six days he was confined in a segregation cell, he was forced to utilize a smelly, dirty, thin mattress. He claims that this exacerbated his back problems and caused him severe pain.

Plaintiff maintains that defendants Hinajosa and Williams-Ward operated the segregation unit and were responsible for operations and maintenance in that unit. Plaintiff asked them to replace his mattress with a new mattress from the storage room. The defendants denied his request, with defendant Williams-Ward stating "you won't be over there that long." (ECF No. 1, PageID.13.) He alleges that defendants Greason, Stephenson, and Chapman failed to properly train and supervise Hinajosa and Williams-Ward.

Plaintiff fails to state a constitutional deprivation. First, his factual allegations do not show that he was "subjected to specific deprivations that are so serious that they deny him 'the minimal civilized measure of life's necessities.'" *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). He spent only six days in segregation and, according to the complaint, his back condition and pain was long-standing, predating his stay in segregation. While he alleges that Hertzler's assault exacerbated his condition and chronically worsened his pain, he does not allege that the discomfort caused by the mattress continued after he was released from segregation. Further, the facts alleged fail to show that defendant Hinajosa and Williams-

13

Ward knew of and disregarded "an excessive risk" to his health. *Farmer*, 511 U.S. at 837. The mattress's condition may have caused Plaintiff temporary pain but the facts alleged, if proven, do not rise to the level of an Eighth Amendment violation. *See Grisson v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) (holding that a plaintiff who asserted she was completely deprived of a mattress for seven days causing her pain did not state an Eighth Amendment claim); *Jones v. Toombs*, 77 F.3d 482, 1996 WL 67750 at *1 (6th Cir. 1996) ("The defendants did not violate Jones's Eighth Amendment rights by depriving him of a mattress for a two week period.").

Plaintiff's Eighth Amendment claims against defendants Greason, Stephenson, and Chapman are based upon their supervisory authority. The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel, *see Monell*, 436 U.S. at 691-95 (1978), unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A supervisor's failure to supervise, train or control an employee is not actionable under § 1983, unless the plaintiff shows "the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . ." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

Plaintiff fails to allege that defendants Greason, Stephenson, and Chapman engaged in any "active unconstitutional behavior" rather than a "'mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of*

14

*Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).  He, therefore, fails to state a claim against them.

    **C.**    **First Amendment Claims**

        **1.**    **Grievance Responses**

Plaintiff raises claims against defendants T. Johnson, E. Parr-Mirza, Patricia Lamb, Nenrod, Michelle Williams-Ward, and G. Stephenson based upon their responses to grievances.

The First Amendment guarantees "the right of the people ... to petition the Government for a redress of grievances." U.S. Const. amend. I.  A prisoner has a First Amendment right to file grievances against prison officials, *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), but the First Amendment does not impose an affirmative obligation on the government to consider, respond to, or grant any relief on a citizen's petition for redress of grievances. *See Smith v. Arkansas State Highway Employees*, *Local 1315*, 441 U.S. 463, 464-65 (1979); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.").

A prisoner also does not have a constitutionally-protected interest in an inmate grievance procedure or the right to an effective procedure. *See e.g., Walker v. Michigan Dep't of Corrections*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing cases).  Thus, Plaintiff's claim that T. Johnson, E. Parr-Mirza, Patricia Lamb, Nenrod, Michelle Williams-Ward, and G. Stephenson failed

to properly or adequately respond to his grievances fails to state a claim on which relief may be granted. See *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (holding that a defendant's denial of an administrative grievance was "insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983"); *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) ("the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983").

Defendants T. Johnson, E. Parr-Mirza, Patricia Lamb, and Nenrod will be dismissed from this action because Plaintiff's claims against these defendants are based solely upon their grievance responses. Plaintiff raises additional claims against defendants Williams-Ward and Stephenson which, as discussed below, are also meritless. So they will also be dismissed from this action.

### 2. Retaliation

Plaintiff claims that defendants Hartzler and White retaliated against him for filing grievances. Defendant Hartzler retaliated by filing a misconduct ticket and defendant White by threatening Plaintiff.

A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Thaddeus-x v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). A retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

16

(3) there was a causal connection between elements one and two, *i.e.*, the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Id.* at 394.

Plaintiff states sufficient allegations against defendants Hartzler and White to proceed on his retaliation claim.

### D. Defendant Gretchen Whitmer

Plaintiff names Michigan Governor Gretchen Whitmer as a defendant. He fails to make specific factual allegations against her, but name her solely based upon defendant Lamb's actions. He argues that defendant Lamb interpreted executive orders issued by Governor Whitmer arguments against her argues that an unspecified executive order issued by Governor Whitmer caused defendant Lamb to deny his grievance. Plaintiff's allegations are vague and fail to state a claim. Additionally, he fails to allege that Governor Whitmer engaged in any conduct specifically directed at him.

### E. Fifth and Fourteenth Amendment Claims

Finally, Plaintiff claims that his rights under the Fifth and Fourteenth Amendments were violated. He fails to allege with any specificity what conduct allegedly violated these Amendments.

To the extent that he raises a due process violation, these claims are meritless. The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[T]hose who seek to invoke its procedural protection must establish that one of these interests is at stake." *Id.* An inmate does not have a protected liberty interest in

17

connection with prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit has held that a penalty of thirty days in disciplinary segregation does not rise to the level of an atypical and significant hardship. *Bey v. Palmer*, No. 16-2790, 2017 WL 2820953, *2 (6th Cir. May 23, 2017). *See also Sandin*, 515 U.S. at 485-86 (holding that 30 days of disciplinary segregation did not give rise to a protected liberty interest). Because Plaintiff's misconduct conviction did not result in either an extension of the duration of his sentence or some other atypical hardship, he fails to state a Fourteenth Amendment due process claim.

Plaintiff's Fifth Amendment due process claim also fails. "[T]he Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay Cty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). Plaintiff raises his claims only against state actors. The court will dismiss Plaintiff's Fifth Amendment claim.

Finally, to the extent Plaintiff raises an equal protection this claim it also lacks merit. Prisoners are entitled to equal protection under the law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The linchpin of an equal protection claim is that the government has intentionally treated people who are similarly situated in a different manner based upon an improper factor such as race, gender, or age, or in the absence of a rational basis for the disparate treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff fails to explain in any way how he has been treated differently from others who are similarly situated. Further, prisoners are not members of a protected class for equal protection purposes. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). Plaintiff fails to state an equal protection claim.

## V. Conclusion

For the reasons stated, the Court **DISMISSES** defendants Sims, Willis Chapman, Tiffany DeLuca, Cinthia McInnis, Patrice Pheneuf, T. Johnson, E. Parr-Mirza, Patricia Lamb, Dianna Herring, Sherry Graham, Gretchen Whitmer, Corizon, Inc., Nenrod, G. Stephenson, Vanessa Hinajosa, Michelle Williams-Ward, and Alan Greason. The Court also **DISMISSES** Plaintiff's Fifth and Fourteenth Amendment claims.

Plaintiffs remaining claims may proceed against defendants M. Hartzler, Mike Groves, and Lt. White.

**SO ORDERED**.

s/ Victoria A. Roberts
VICTORIA A. ROBERTS
UNITED STATES DISTRICT JUDGE

Dated: 1/13/2021